**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

GATEWAYS TO CHANGE, INC.

v. C.A. No. 05-120ML

KATHLEEN SPANGLER, IN HER CAPACITY AS DIRECTOR OF THE RI DEPARTMENT OF MENTAL HEALTH, RETARDATION & HOSPITALS; AND THROUGH HER THE RI DEPARTMENT OF MENTAL HEALTH, RETARDATION & HOSPITALS

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant and hereby move for the entry of summary judgment. In support thereof, defendant relies upon the Memorandum of Law, attached and incorporated herein.

Defendant,
By its attorney,

Marc DeSisto (EMD)

Marc DeSisto, Esq. #2757
DESISTO LAW
211 Angell Street
Providence, RI 02906
(401) 272-4442
Fax: 272-9937
E-Mail: marc@desistolaw.com



5

**CERTIFICATION OF SERVICE**

I hereby certify that a true copy of the within was mailed, postage prepaid on this 27st day of May 2005 to:

Kathleen McDaniels

Gary R. St. Peter, Esq.
St. Peter & Kasle
Four Richmond Square
Providence, RI 09203

Richard G. Galli, Esq.
224 Cindyann Drive
East Greenwich, RI 02818

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

GATEWAYS TO CHANGE, INC.

v. C.A. No. 05-120ML

KATHLEEN SPANGLER, IN HER CAPACITY AS DIRECTOR OF THE RI DEPARTMENT OF MENTAL HEALTH, RETARDATION & HOSPITALS; AND THROUGH HER THE RI DEPARTMENT OF MENTAL HEALTH, RETARDATION & HOSPITALS

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## *I. Introduction*

Plaintiff, Gateways to Change, Inc., have brought the instant Complaint pursuant to *42 U.S.C. § 1983* against the R.I. Department of Mental Health, Retardation & Hospitals (hereinafter "MHRH") challenging MHRH's implementation of the Rules and Regulations of the MHRH. Plaintiff specifically claims that MHRH's issuance of a Show Cause Notice (Attached Exhibit A) in lieu of a licensing revocation proceeding violated plaintiff's due process and equal protection rights, as well as amounted to a taking of plaintiff's property without just compensation. MHRH hereby moves for summary judgment and submits that the undisputed facts, as a matter of law, fail to demonstrate that plaintiff's constitutional rights have been violated.

## *II. Undisputed Facts*

The material facts pertinent to the resolution of the instant Motion are undisputed.[1]

[1] The first seven (7) pages of Plaintiff's First Amended Complaint raise factual allegations involving parties not named in the instant suit. These allegations are likewise unrelated to the causes of action claimed by plaintiff. Consequently, they are immaterial to resolution of the

Plaintiff, Gateways to Change, Inc., is a private non-profit corporation licensed by MHRH to provide services to adults with developmental disabilities. In 2004, MHRH began receiving a series of incident reports involving plaintiff's services that resulted in a formal investigation or Quality Assurance inquiry . In fact, during 2004, in addition to receiving the most reportable incidents, MHRH received more than double the number of *serious* reportable complaints than any of the nine (9) other service providers who provide services similar in scope to plaintiff. Wary for the safety of the clients being serviced by plaintiff, MHRH met with plaintiff's counsel to discuss the appropriate course of action. Rather than pursue an immediate license revocation hearing (which could interfere with the services provided to plaintiff's clients), MHRH offered plaintiff's counsel a Show Cause hearing and monitoring procedure. With the assistance of plaintiff's counsel, a Show Cause Notice was prepared instructing plaintiff to take certain actions to bring their organization into compliance with the Rules and Regulations and demonstrate such compliance by a certain date.

Upon receipt of the Notice of Show Cause, plaintiff begins to comply with its requirements by hiring an outside monitor and submitting a compliance plan that was approved by MHRH. Plaintiff also subsequently filed a Notice of Appeal from the Show Cause Notice in accordance with the MHRH's review procedures. *See Exhibit B.* A hearing officer was thereafter appointed to address plaintiff's appeal from the Show Cause notice. *Exhibit C.* That appeal is currently pending.

*III. Standard of Review*

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when "the

---

instant Motion.

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* It is axiomatic that this Court must view the evidence in the light most favorable to the nonmoving party. *Morrissey v. Boston Five Cents Savings Bank, F.S.B., 54 F.3d 27, 31 (1st Cir. 1995).* However, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but . . . must set forth the specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P. 56(e).* "A fact is 'material' if it potentially could affect the suit's outcome. An issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortes-Iriszarry v. Corporacion Insular DeSeguros, 111 F.3d 184, 187 (1st Cir. 1997) (citations omitted).*

Accordingly, the purpose of summary judgment is to permit the court "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required" on the claims being examined. *Wynne v. Tufts Univ. School of Medicine, 976 F.2d 791, 793-94 (1st Cir. 1992) cert. denied 113 S.Ct. 1845 (1993).* The mandates of Rule 56(c) requires entry of summary judgment "upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).*

*IV. Plaintiff's Right to Due Process and Equal Protection have not been violated*

In the instant case plaintiff first maintains that MHRH actions violates plaintiff's due

process and equal protection rights as guaranteed under the Rhode Island and U.S. Constitutions. It is first noteworthy that although this Court has asked for Memoranda on the federal constitutional claims, the "due process" and "equal protection" clauses of the Rhode Island Constitution "were intended, by the drafters to parallel the language of the Fourteenth Amendment to the United States Constitution." *Autobody Recyclers Ass'n of R.I. v. McConaghy, 2005 R.I. Super. LEXIS 21 (R.I. Super. Ct., 2005) citing Jones v. Rhode Island, 724 F. Supp. 25 (D. R.I. 1989).* Thus, Rhode Island's due process and equal protection provisions "provide protections similar to the equal protection and due process guarantees of the Fourteenth Amendment to the United States Constitution." *Id. citing Kleczek v. Rhode Island Interscholastic League, Inc., 612 A.2d 734, 740 (R. I. 1992).* Consequently, a determination of the merits of the plaintiff's federal constitutional claims is similarly dispositive of the state constitutional claims.

A. Due Process

According to plaintiff, its due process rights have been violated by the issuance of a Show Cause notice. According to plaintiff's Amended Complaint, this due process violation is evident by the fact that MHRH has instituted a hearing process that is not supported by the Rules and Regulations for MHRH. However, it is well-settled that "[t]he process required by the Due Process Clause is not measured by procedures provided for by state law." *Goodrich v. Newport News School Board, 743 F.2d 225, 227 (4th Cir. 1984).* Rather, so long as "minimal [Fourteenth Amendment] due process requirements of notice and hearing have been met," a claim that "an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations." *Id.* In other words, "the Fourteenth Amendment does not

require [an agency] to adhere to its own guidelines as long as minimum due process is accorded." Id. See also Atencio v. Board of Educ., *658 F.2d 774, 779-80 (10th Cir. 1981)("A breach of procedural requirements does not create a due process violation unless an individual was "denied a fair forum for protecting his state rights."); see also* Caceres v. United States, *440 U.S. 741, 751-52, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979);* Everhart v. Jefferson Parish Hosp. Dist. No. 2, *757 F.2d 1567, 1570-71 (5th Cir. 1985) (hospital executive committee violates own rules; no due process violation);* Bowens v. N.C. Dep't of Human Resources, *710 F.2d 1015, 1019-21 (4th Cir. 1983) (peer group review committee violates own rules, but nonetheless provides constitutionally adequate hearing); cf.* Costello v. Town of Fairfield, *811 F.2d 782, 784 (2d Cir. 1987) (contract dispute does not give rise to cause of action under section 1983).* As the Supreme Court stated in Pennhurst State School & Hosp. v. Halderman, *465 U.S. 89, 106 (1984),* "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." In short, assuming that plaintiff can demonstrate a violation of the department's rules and regulations, this of itself is insufficient to give rise to a due process claim. McDarby v. Dinkins, *907 F.2d 1334, 1337 (2d Cir., 1990)(Defendant Board's failure to adhere to applicable provisions of the Administrative Code does not, without more, constitute a deprivation of procedural due process under the federal constitution).*

Defendant further submits that the undisputed facts nevertheless fail to support a claim for the deprivation of plaintiff's due process rights. In order to state a *§ 1983* claim for procedural due process claim, plaintiff must show (i) that he has a constitutionally protected property interest, and (ii) that he has been deprived of that interest by state action. Board of

Regents v. Roth, *408 U.S. 564 569-70 (1972).* Thus, the first element for a procedural due process claim is a determination that a property right or interest is at stake. *Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993)*. Once these elements are established, the question turns to what process is due and whether it has been provided. *See Stone v. Univ. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).*

In the instant case, plaintiff cannot establish that the actions of MHRH places plaintiff's property interest at stake. As is evident from the face of the Show Cause Notice, the only thing to be determined by the Show Cause hearing is *whether* licensing action should be taken against plaintiff. The Show Cause procedure will not, by itself, deprive plaintiff of a property right. Summary judgment on Count III should accordingly enter.

In addition, summary judgment on Count III should also enter because plaintiff has failed to prove that it lacks an adequate state law remedy. The case law is clear that in order to state a procedural due process claim under *§ 1983* "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati, 934 F.2d 726, 731 (6th Cir. 1991) (quoting Vicory v. Walton, 721 F.2d 1062, 1066 (6th Cir. 1983)).* A plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." *Jefferson, 360 F.3d at 588. See also Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992) quoting Zinermon v. Burch, 494 U.S. 113, 125-126 (1990).* Quite simply, "a procedural due process claim may not be redressed under section 1983 where an adequate state remedy exists." *Reid v. New Hampshire, 56 F.3d 332, 341 (1st Cir. 1995). See also Jefferson v.*

Jefferson County Pub. Sch. Sys., *360 F.3d 583, 587-88 (6th Cir. 2004)( If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury").*

In the instant case, not only is there an adequate state law remedy available to plaintiff but plaintiff has in fact engaged in that review process. As noted *infra,* shortly after receiving the Notice of Show Cause, plaintiff filed a Notice of Appeal from that notice. Pursuant to MHRH's Rules and Regulations, this appeal is being heard by a hearing officer. If plaintiff is aggrieved by the Hearing Officer's decision, then, under the terms of MHRH's Rules and Regulations, plaintiff may seek review under Rhode Island Administrative Procedures Act, *R.I.G.L. § 42-35-1 et seq.* Consequently, even if plaintiff can overcome the deficiency of establishing the deprivation of a property right, plaintiff's due process claim must nevertheless fail because plaintiff has an adequate state law remedy. Summary judgment on Count III should accordingly enter in favor of defendant.

B. Equal Protection

In Count IV plaintiff alleges that its right to Equal Protection under both Rhode Island and the United States Constitutions were violated because it has been subjected to rules, etc. that have not been applied to other licensees. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" City of Cleburne, TX v. Cleburne living Ctr., *473 U.S. 432 439 (1985).* This has been broken down into two inquiries: (1) whether the appellant was treated differently than others similarly situated, and (2) whether such a difference was intentional or purposeful discrimination based on an impermissible consideration, such as race. Macone v. Town of

Wakefield, *277 F.3d 1, 10 (1st Cir. 2002)(citations omitted) and* Hayden v. Grayson *134 F.3d 449, 453 (1st Cir. 1998).* In the instant case, plaintiff noticeably does not allege that it has been treated differently than other similarly situated individuals. Rather, it simply alleges that other licensees have not been subject to the rules applied to plaintiff. However, as noted, in order to succeed on an equal protection claim, must first demonstrate that it is similarly situated to the other entities.

The test to determine whether individuals or entities are "similarly situated" for equal protection purposes "is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. . . . Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." Dartmouth Review v. Dartmouth Coll., *889 F.2d 13, 19 (1st Cir. 1989) (citation omitted).* In meeting this standard, plaintiff must demonstrate that it is similarly situated to other licensees "in all relevant respects." Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp., *246 F.3d 1, 8 (1st Cir., 2001).*

Summary judgment should enter in favor of defendant in the first instance because plaintiff has not alleged and cannot demonstrate that it is "similarly situated" to other licensees. It is undisputed that has been the subject of significantly more complaint than any other licensee. As noted, MHRH received more than double the number of reportable incidents than any of the other nine (9) providers of similar scope. In fact, unlike the other licensees, plaintiff were on the verge of being made subject to a license revocation procedure before the instant oversight was instituted. Plaintiff therefore is not "similarly situated" to the other licensees and therefore cannot maintain a claim for the deprivation of its right to equal protection.

In addition, summary judgment is appropriate as a matter of law because plaintiff fails to identify an intentional discriminatory animus as the motivating factor behind defendant's actions. Hayden, *134 F.3d at 453*. As noted, in order to succeed on an equal protection claim, plaintiff must demonstrate intentional or purposeful discrimination. *Navarro v. Block, 72 F.3d 712, 716 (9th Cir. 1995) (A long line of Supreme Court cases makes clear that the Equal Protection Clause requires proof of discriminatory intent or motive").* Intentional or purposeful discrimination, "'implies more than intent as volition or intent as awareness of consequences.' It implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adversive effects on the identifiable group." *Muckway v. Craft, 789 F.2d 517, 520 ( 7th Cir. 1986) quoting Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir. 1982).* A "discriminatory purpose" is not presumed, there must be a showing of 'clear and intentional discrimination.'" *Snowden V. Hughes, 321 U.S. 1, 8 (1944). Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (citations omitted) (In order to establish its claim, however, plaintiff needs to allege facts indicating that, "compared with others similarly situated, [it] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person").*

In the instant case, there is simply no evidence to support a finding of intentional or purposeful discrimination on the part of MHRH. A plaintiff "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by discriminatory animus." *Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir.1990).* Absent evidence of such a discriminatory animus, summary judgment on Count IV of

plaintiff's First Amended Complaint should enter.

*V. Taking Without Just Compensation*

In Count V of the First Amended Complaint, plaintiff alleges that MHRH's issuance of the show cause notice amounts to an "attempt to destroy or impair" plaintiff's property interest and constitutes a taking of private property without just compensation. *Plaintiff's First Amended Complaint, at ¶ 91-92.* Defendant submits that summary judgment on count V should enter because such a claim is not ripe for adjudication.

The Takings Clause of the Fifth Amendment provides: "Nor shall private property be taken for public use, without just compensation." "The aim of the Clause is to prevent the government 'from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'" *E. Enters. v. Apfel, 524 U.S. 498, 522 (U.S., 1998) quoting Armstrong v. United States, 364 U.S. 40, 49 (1960).* It is quite apparent, even from the face of plaintiff's First Amended Complaint, that plaintiff is not alleging that their property has actually been taken without just compensation. Rather, according to Plaintiff's First Amended Complaint, defendant is *attempting* to destroy a property interest through the Show Cause hearing notice. There is no civil rights cause of action under the Constitution for *threats* to violate a constitutional right. To be actionable, plaintiff's constitutional rights must have actually been violated. *Arnold v. Truemper, 833 F. Supp. 678, 683 (D. Ill., 1993); Echtenkamp v. Loudon County Pub. Schs, 263 F. Supp. 2d 1043, 1056 (D. Va., 2003).*

In any event, the Supreme Court has clearly held that two requirements must be satisfied in order for a takings claim to be ripe. First, "the government entity charged with implementing the regulations [must have] reached a final decision regarding the application of the regulations

to the property at issue." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Second, the plaintiffs must have sought "compensation through the procedures provided by the State for obtaining such compensation." *Id.* at 195. If a claim is unripe, federal courts lack subject matter jurisdiction over the claim and it must be dismissed. *Southern Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990). In the instant case, plaintiff fails to satisfy either of these requirements. Not only has there been no final decision regarding the property at issue, but plaintiff has not sought compensation through the State for the alleged deprivation. Defendant thus submits in that summary judgment as a matter of law should enter on Count V in favor of defendant.

*V. Conclusion*

For the reasons cited herein, as well as those that may be raised at hearing defendant respectfully request that summary judgment in favor of defendant enter.

Defendant,
By its attorney,

Marc DeSisto (JMD)
Marc DeSisto, Esq. #2757
DESISTO LAW
211 Angell Street
Providence, RI 02906
(401) 272-4442
Fax: 272-9937
E-Mail: marc@desistolaw.com

**CERTIFICATION OF SERVICE**

I hereby certify that a true copy of the within was mailed, postage prepaid on this 27st day of May 2005 to:

Kathleen McDaniels

Gary R. St. Peter, Esq.
St. Peter & Kasle
Four Richmond Square
Providence, RI 09203

Richard G. Galli, Esq.
224 Cindyann Drive
East Greenwich, RI 02818

# EXHIBIT A

**IN RE: GATEWAYS TO CHANGE** **MHRH ADMINISTRATIVE HEARING**

## NOTICE OF SHOW CAUSE HEARING

NOW COMES, the Acting Director of the Department of Mental Health, Retardation and Hospitals (the "Department"), Kathleen M. Spangler and states as follows:

1. That Gateways to Change ("Gateways") is a private non-profit corporation licensed by the Department to provide services to adults with developmental disabilities.

2. That Gateways currently holds the following licenses:
   a. #380 17 Amy Drive, Cranston
   b. # 252 64 Basil Crossing, Cranston
   c. # 304 7 Redbud Terrace, Cranston
   d. #221 407 Greenville Avenue, Johnston
   e. #205 9 Woodcliff Avenue, North Providence
   f. #19 21 Pond House Road, North Smithfield
   g. #13 397 Greenville Road, North Smithfield
   h. #72 259 Stillwater Road. Smithfield
   i. #56 11 Knight Street B6, Warwick
   j. #305 190 Aspinet Drive, Warwick
   k. #336 161 Andrews Avenue, West Warwick

3. That in March of 2004, the Department placed Gateways on a Compliance Order. The Department had considered taking a licensing action to curtail, revoke or suspend Gateways' licenses, due to serious monitoring concerns, licensing violations and substantiated allegations of abuse, neglect and human rights violations at Independence House. These monitoring concerns, licensing violations and substantiated allegations placed the health, welfare and safety of people with developmental disabilities residing at Independence House in jeopardy.

4. In order to avoid disrupting the lives of many individuals with developmental disabilities receiving services through Gateways by revoking the license, the Department prior to taking any affirmative licensing action instructed Gateways to immediately comply with the Compliance Order.

5. That during and after the pendency of the Compliance Order the Department continued to respond to complaints and serious reportable incidents through unannounced Licensing and Quality Assurance monitoring visits, reviews and investigations. The Department did substantiate complaints and identify various programmatic and administrative concerns regarding the quality of care provided by Gateways.

6. That in October of 2004, the Department notified Gateways that any new referrals to Gateways would not be authorized for funding. The Department conducted an intensive review of various programs, services and funding authorizations of approximately twenty-five (25) individuals receiving services/supports from Gateways.

7. That on or around December 31, 2004, there was an incident at a facility owned and operated by Gateways that resulted in a person with a developmental disability being severely physically abused, injured and hospitalized under protective custody. This incident is under investigation by the Cranston Police, the Office of the Attorney General and the Department (the "Investigation").

8. The preliminary findings of the Investigation and the above referenced incidents over the last year, indicate that beyond the physical abuse and injuries that occurred to an individual on or around December 31, 2004, there are problems and concerns with the management oversight capacity and capability of Gateways to maintain and protect the health and safety of the persons whom they serve at all their facilities and under their agency license.

Therefore, pursuant to Rhode Island General Laws section 40.1-24-1 et seq. and Rhode Island General Laws section 43-35-9, and based upon the above, the Department is instructing Gateways to attend a Show Cause Hearing in Conference Room 126, Department of Mental Health, Retardation and Hospitals, Barry Hall, 14 Harrington Road, Cranston, Rhode Island 02920 on April 26, 2005 at 10 am, to show cause why the Department shall not, at that time, initiate a licensing action against Gateway's above enumerated licenses (the "Hearing").

Prior to this Hearing, on February 2, 2005, at 1:00 pm. in Conference Room 126, Department of Mental Health, Retardation and Hospitals, Barry Hall, 14 Harrington Road, Cranston, Rhode Island 02920, Gateways shall meet with the Acting Director's designee and provide the Department with a detailed written plan that addresses the health, safety, and welfare of the persons served by the Agency (the "Meeting").

At a minimum, Gateways shall provide the Department at the Meeting with the following written information:

a. The agency shall obtain assistance from an individual or management consultant/organization to work directly with the Executive Director and administrative staff, Board of Directors, and Human Rights Committee of the agency in implementing the necessary organizational actions in order to improve the quality of services/supports provided to people with disabilities served by Gateways. This shall include the development of monthly summary status reports on the implementation of various actions plans, copies of policies/procedures/protocols, summary of administrative monitoring and oversight, structures for supervisory procedures, description of staff training and professional development programs and curriculums. The individual or management consultant/organization must be approved by the Department.

b. A detailed written plan for on site administrative presence and management supervision/oversight for all programs and residential settings operated and staffed by Gateways (the "Programs"). This shall include the names and contact numbers of all the administrative supervisory staff of the agency and shall include the specific detailed responsibilities of such staff.

c. The on-call and emergency procedures for supervisory and healthcare oversight of the Programs. Specifically, to include, but not limited to processes for assuring appropriate staffing on various shifts, procedures for responding to serious incidents and healthcare concerns reported by support and/or supervisory staff.

d. Staffing plans and schedules for all the Programs, including support staff/professional staff and supervisory/administrative staff.

e. On a going forward basis, and beginning on January 24, 2005, copies of all internal Incidents Reports/Significant Event Forms and serious reportable incidents required to be reported to the Department's Office of Quality Assurance, shall be immediately faxed to (401) 462-6189, to the attention of the Department's Office of Quality Assurance within the Division of Developmental Disabilities.

f. On a going forward basis from January 24, 2005, the Gateways Director of Nursing shall compile, on a bi-weekly basis, a synopsis of data from any and all Accident/Health Care Forms generated during each two (2) week period. Each synopsis shall include the name of the individual receiving supports, the presenting symptoms/injuries described by staff completing the form, the name of the agency nurse contacted, the date and time of the contact with the nurse, and instructions/disposition/follow up care by the nurse. On a bi-weekly basis, the synopsis shall be faxed to the attention of the Department's Office of Health Care for the Division of Developmental Disabilities at (401) 462.6063. Administrative staff of the Office of Health Care shall conduct a retrospective review of these synopses. The original Accident/Health Care Forms shall be made available to the Department upon request.

g. A detailed description of Gateways' staff training and professional development program. Including but not limited to:
   i. Topic area
   ii. Summary of content/learning objectives of training
   iii. Presenter
   iv. Hours of the training program
   v. Curriculums utilized and informational materials provided to staff
   vi. Schedule of yearly training planned for 2005
   vii. Copies of all the above referenced documents
   viii. Attendance sheets

h. Processes and procedures in place to ensure adequate staffing, attendance, staff change reporting and documentation of daily summaries of activities. This shall also include written policies describing backup provisions and procedures to address staff

tardiness and/or absence from work. Identification of the administrative persons responsible for the implementation and on-going oversight of such processes and procedures.

i. Policies and procedures pertaining to the roles, responsibilities and function of Gateways' Internal Incident Management Committee. Including a written list of the names of individuals on such committee, schedule of committee meeting times, copies of forms utilized to document follow-up, action steps and recommendations.

On March 3, 2005, at 2pm in Conference Room 126, Department of Mental Health, Retardation and Hospitals, Barry Hall, 14 Harrington Road, Cranston, Rhode Island 02920, Gateways shall meet with the Acting Director's designee to review Gateways' implementation of the written materials provided to and developed with the Department at the Meeting (the "Plan"). The Department shall closely monitor and inspect Gateways to ensure that it is in full compliance with the Plan pending the Show Cause Hearing on April 26, 2005.

Kathleen M. Spangler 1/21/05
Acting Director

CERTIFICATION

I hereby certify that I hand delivered a copy of the within MHRH Administrative Show Cause Hearing Notice to Catherine McGillivray, Executive Director, Gateways to Change, 11 Knight Street, B6, Warwick RI, 02886, via regular mail and facsimile to Gary St. Peter, Esq., St. Peter and Kasle, 4 Richmond Square, Providence RI, 02906, via regular mail to James Boucher, Chair of Board, 25 Haverhill Avenue, Warwick, RI. 02886, and via regular mail to Joann Pace-Pari, Human Rights Chairperson, 4 Eben Street, North Providence, RI. 02904 on this 25th day of January, 2005.

Beverly Colombo
______________________

# EXHIBIT B

Jane"

# MHRH ADMINISTRATIVE HEARING

rec'd Legal 2.25.05

**IN RE: GATEWAYS TO CHANGE**

## OBJECTION AND NOTICE OF APPEAL REGARDING NOTICE OF SHOW CAUSE HEARING

Gateways to Change objects to the "Notice of Show Cause Hearing" dated January 21, 2005 for a variety of substantive and procedural grounds, including *without limitation:*

- It is not supported by sufficient facts;
- It does not comply with applicable law and procedure, including service requirements;
- It violates due process rights;
- It denies Gateways' right of equal protection under the law

Furthermore, pursuant to applicable law and procedure, Gateways hereby objects to and appeals each and every finding, determination, "concern," instruction, demand and order contained in the Notice, including *without limitation* those appearing in paragraphs 3 through 8 and a through i.

Gateways demands that one or more hearings be scheduled on its objection and appeal, to occur within the time provided by the Rules.

We reserve the right to seek any other relief which the law allows.

**Gateways to Change, Inc.,** by its Attorneys

**Richard G. Galli, Esq.** 1747
*Designated Trial Counsel*
224 Cindyann Drive
East Greenwich, RI 02818
Phone / Fax: 401 884 3215

**Gary R. St. Peter, Esq.** 1672
St. Peter & Kasle Incorporated
Four Richmond Square
Providence, RI 02906
Phone 401 4534330 / Fax 453 4333

**Certification**

I certify that I caused a copy of this document ~~to be served upon~~ Kathleen Spangler, Barry Hall, 14 Harrington Road, Cranston, RI 02920 by fax / first class mail / hand-delivery on the 18th day of February, 2005.

LouAnn M. Audette

# EXHIBIT C

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Department of Mental Health, Retardation and Hospitals
OFFICE OF THE DIRECTOR
14 Harrington Road
Cranston, RI 02920-3080
TDD: (401) 462-6087
TEL: (401) 462-3201
FAX: (401) 462-3204

April 15, 2005

Richard Galli, Esq.
Of Counsel
St. Peter & Kasle
4 Richmond Square
Providence RI 02906

Re: Gateways to Change Notice of Appeal

Dear Mr. Galli:

On February 18, 2005, the Department received your client Gateways to Change's, Notice of Appeal to the Notice of Show Cause served on your client on January 25, 2005 ("Notice of Appeal"). On February 18, 2005, the Department acknowledged receipt of your Notice of Appeal and informed you that I would appoint a designated Hearing Officer to hear your client's appeal.

I have appointed Kevin Aucoin, Chief Legal counsel for the Department of Children, Youth and Families as the designated hearing officer to handle your Notice of Appeal. Mr. Aucoin will be contacting you directly to set up the hearing date, time and location.

Your appeal will probably be scheduled for hearing after the April 26, 2005, date for hearing contained in the Notice of Show Cause. Despite your filing a Notice of Appeal and a Civil Action concerning among other things the Notice to Show Cause on your client's behalf, Gateways to Change has been diligently and voluntarily working with the Department on all the requirements of the Notice to Show Cause. I appointed Craig Stenning as my designee to handle the Notice to Show Cause. Mr. Stenning is out of the state on April 26, 2005, and is therefore not able to handle this matter as my designee. As such, unless you instruct the Department that your client will no longer participate in the Notice of Show Cause process, I am continuing that matter to May 10, 2005, at nine o'clock in the morning, at Barry Hall in Room 126. It is my hope that your client will continue

to voluntarily participate in the Notice of Show Cause process despite the pending administrative appeal and civil action. The safety of the clients and the quality of services delivered by our licensed providers remains the Department's primary concern. Your attention to this matter is greatly appreciated.

Sincerely yours,

Kathleen M. Spangler
Acting Director
MHRH

c.c. Craig Stenning
Jane E. Morgan, Esq.
Mark Desisto, Esq.
Kathleen Daniels, Esq.
Kevin Aucoin, Esq.