UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

**GATEWAYS TO CHANGE, INC.**

**VS.** **C. A. NO. 05 - 120 ML**

**KATHLEEN SPANGLER, ETC**

**GATEWAYS' OBJECTION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Gateways objects to the Motion for Summary Judgment filed the by Defendants. Our Objection is supported by the Memorandum, Affidavits and Statement of Genuine Issues provided herewith.

**Gateways to Change, Inc.**, by its Attorneys

**Richard G. Galli, Esq.** 1747
*Designated Trial Counsel*
*Of counsel* to St. Peter & Kasle Incorporated
Four Richmond Square
Providence, RI 02906
Phone 401 4534330 / Fax 453 4333

**Gary R. St. Peter, Esq.** 1672
St. Peter & Kasle Incorporated
Four Richmond Square
Providence, RI 02906
Phone 401 4534330 / Fax 453 4333

**Certification**

I certify that a copy of this Objection, Memorandum, Statement of Genuine Issues, and Affidavits of Catherine McGillivray, Douglas Stone, Richard Galli and Gary St. Peter were served by first class mail / hand delivery / fax upon Marc DeSisto, Esq., 211 Angell Street, Providence, RI 02906 and by first class mail / hand delivery / fax upon Jane Morgan, Esq., 14 Harrington Road, Barry Hall 2, Cranston, RI 02920 on this 8th day of July, 2005.

Kimberly A. Peters

GATEWAYS TO CHANGE, INC.

VS. C. A. NO. 05 - 120 ML

KATHLEEN SPANGLER, ETC

GATEWAYS' MEMORANDUM SUPPORTING
OBJECTION TO TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## *Introduction*

Foremost among the interesting issues raised by Defendants' motion for summary judgment is this one:

*Should a portion of our lawsuit be dismissed because it has been so successful?*

Our case asserts the broad proposition that Gateways has been treated unfairly, for a number of reasons. *One element* of the case has been the prosecution by MHRH of a one-of-a-kind process they have entitled "Notice of Show Cause Hearing."

Ignoring the rest of our case – and that was a lot to ignore – the Defendants focused on the Notice of Show Cause Hearing process, and said it was good enough to pass Constitutional muster.

But they focused on the process as they say it now exists. They did not focus on the process as it existed when we filed suit in Superior Court. They didn't even focus on the process as it existed before counsel for the parties attended a preliminary conference with this Court.

To understand their Motion it's important to appreciate that the process which they now say is "due enough" is in fact the product of our litigation. They try to take the credit for the fruit of our efforts, not theirs.

A second issue that should be red-flagged at the start is the notion that a state agency can't be tagged with a Constitutional due process claim "merely" for failing to follow its own rules. That statement is true, but it doesn't constitute perfect protection. After all, if the agency doesn't follow the rules as they were written, the question becomes what standards – if any --

does the agency *actually* apply in their place? *Something* is required. If not one thing, then what's the other?

A good part of the factual travel of the case involves our effort to determine what standards and procedures would govern the "Notice of Show Cause Hearing" process. We have tried to convince MHRH to follow its own Rules. But we have also tried to discover from MHRH what rules or standards *would apply* if MHRH chose *not* to follow its own Rules.

We have been successful in part in putting the process "on track" at the administrative level. That success is a product of this litigation, and not a defense to it. Had we not redirected MHRH back to its own Rules, they would have had nothing to point to and say "that process is due enough." We filled their void.

### *Recommended Resolution of the Motion – By Assent*

This case was filed in the Superior Court and frankly we believe it should go back there for disposition. While we have a right to dispute both the factual bases and the legal arguments raised in the Defendants' motion, we have no desire to involve the Federal Court unnecessarily when deference could be accorded to the state courts without doing substantial damage to the case. This is especially true since there has been a material change – a concession – in the procedures by which MHRH has organized the litigation of the Notice of Show Cause Hearing.

The single most important problem was resolved after our preliminary conference with this Court, and as a direct result of that conference. MHRH had chopped the Notice of Show Cause Hearing process into two parts, and wanted to hold a trial on the merits before hearing our objection to the process. After the conference with this Court, MHRH relented and now the objection is being heard by a Hearing Officer, and will be resolved before the trial on the merits is convened.

Since most of the issues we raised can *now* be addressed *within the agency hearing process* (within the contemplation of the Administrative Procedures Act) there is no purpose to be served by prematurely pressing Constitutional claims.

Consequently, we have no objection to dismissal of the federal claims (Equal Protection, Due Process and Fifth Amendment taking) as premature. We hope that the Court will not exercise its discretion to retain the case, once the federal claims are out of it.

We do want to stress one thing, however. It was not premature to press the Constitutional claims in the original suit. We had filed a motion for an injunction just before the case was removed. The motion was necessary, because there were jurisdictional aspects of the "Notice of Show Cause Hearing" process that needed to be attended to before the Hearing was convened on April 26. That specific problem has since been resolved – as a consequence of the litigation, especially including the preliminary conference with this Court.

## *Travel of the Case*

Our case does not attack the validity of any state statute or regulation. We are, instead, trying to show that the existing scheme ought to be respected, and that MHRH has unlawfully attempted to avoid it, leaving a due process and equal protection vacuum in its wake.

As a consequence of the events and matters referred to in the first few pages of our Amended Complaint (which pages the Defendants intentionally ignore as if they do not exist) in January, 2005 MHRH served Gateways with a "Notice of Show Cause Hearing" that appears to institute a process manufactured uniquely for us, and cannot be found anywhere in the enabling statutes and the agency's rules. A discussion of basic principles is necessary to understand it.

MHRH is a licensing agency by reason of its enabling statute:

> § 40.1-24-7 Denial, suspension, or revocation of license. – The department, after notice and opportunity for a hearing to the applicant or licensee, is authorized to deny, suspend, or revoke a license in any case in which it finds that there has been failure to comply with the requirements established under this chapter. The notice shall be effected by registered or certified mail or by personal service, setting forth the particular reasons for the proposed action and fixing a date not less than thirty (30) days from the date of the mailing or service, at which the applicant or licensee shall be given an opportunity for a prompt and fair hearing. On the basis of any hearing, or upon default of the applicant or licensee, the department shall make a determination specifying its findings of fact and conclusions of law. *** The procedure governing hearings authorized by this section shall be in accordance with rules promulgated by the department. A full and complete record shall be kept of all proceedings, and all testimony shall be reported but need not be transcribed unless the decision is appealed pursuant to § 40.1-24-8. *** Witnesses may be subpoenaed by either party.

Pursuant to its statutory authority, MHRH promulgated a set of RULES GOVERNING PRACTICE AND PROCEDURE that applies to department hearings. There exist no other rules applying to hearings like ours before the department.

Under the MHRH Rules, "contested cases" include licensing determinations and other decisions are processed through three stages:

1. Informal hearing without a hearing officer
2. Pretrial conference with a hearing officer
3. Trial on the record, governed by the hearing officer

MHRH is subject under the Rules to important pre-trial obligations, including

- producing "copies of documents utilized by the Department in making its decision" and
- identifying witnesses

Under the Rules, a licensee knows in advance that the hearing will be recorded, and that witnesses may be subpoenaed to testify.

Either the RULES GOVERNING PRACTICE AND PROCEDURE provide a due-process-compliant framework for the Show Cause Hearing, or that framework has to come from some other source.

The Court can be confident that in our case, guidance on the procedures to be followed before and at the Show Cause Hearing come from no other source. MHRH has never offered any other source, nor any other guidance. If the Rules don't apply, then the Show Cause Hearing will be a one-of-a-kind event with no visible rules and no means of control.

This is a brief digest of the efforts we have made to compel MHRH to follow its own Rules, *or to tell us what other procedures or standards would apply if the Rules do not.*

01/21/2005 MHRH issues Notice of Show Cause Hearing

> ...the Department is instructing Gateways to attend a Show Cause Hearing... on April 26, 2005 at 10 am, to show cause why the Department shall not, at that time, initiate a licensing action against Gateway's above enumerated licenses...

At this point no hearing officer was indicated, and no rules or procedures were specified. There was no indication of what specific action would be "taken" although under the regulations and the enabling statute any "licensing action" was a hostile act entitling a licensee to contest it.

02/04/2005 *The Providence Journal* reports, based on MHRH interviews:

> State regulators are demanding that Gateways to Change... make reforms... or face *losing its license*... Gateways has until April 26 to make the changes or *face sanctions at a show-cause hearing*.

02/18/2005 Gateways to MHRH:

> I don't find much support for the "Notice of Show Cause Hearing" process in the enabling law and regulations, but you might disagree; so I suggest that a rescission of the Notice "without prejudice" might be the way to go.
>
> However, until I hear otherwise, I will have to act on the assumptions that: (a) it is MHRH's intention to leave the Notice in place, and (b) that MHRH insists that the process contained in the Notice be followed.
>
> That means -- regardless of what the staff might or might not be saying in meetings with the provider -- Gateways will have to consider that the Notice of Show Cause Hearing continues to be a formal step leading toward an eventual *license revocation*. No reasonable person can read the Notice any other way.

02/18/2005 Gateways to MHRH -- Notice of objection/appeal filed

Formal objection submitted to the Notice of Show Cause Hearing for a variety of substantive and procedural grounds.

02/22/2005 Spangler to Gateways [undated - date approximate]:

> Attached please find a copy of the Department's Rules and Regulations pertaining to appeals before the Department. Once I have designated a hearing officer, you will be informed in writing of the Department's designated hearing officer.

MHRH RULES GOVERNING PRACTICE AND PROCEDURE [attached to letter]

> "Contested cases" include licensing determinations and other decisions, and are processed through three stages:
>
> - Informal hearing without a hearing officer
> - Pretrial conference with a hearing officer
> - Trial on the record, governed by the hearing officer
>
> MHRH is subject under the Rules to substantial pre-trial conditions, including
>
> - producing "copies of documents utilized by the Department in making its decision" and
> - identifying witnesses

[Please note: A month previous, the "Notice of Show Cause Hearing" began the process by scheduling the Trial! The last step was scheduled as the first step. It was a wholesale end-run around the pre-trial meeting and disclosure requirements. Although MHRH said the Rules would govern our *appeal* of the Notice, MHRH refused to concede that the Rules would govern the Hearing itself. In fact, MHRH from this point on continued to schedule and re-schedule the Trial without regard to its pre-trial obligations, and also without conceding that MHRH would ever comply with them. And MHRH has never, to this date, indicated what rules and procedures would apply to the Hearing if the contested case Rules do not.]

02/25/2005 Gateways files lawsuit against MHRH

Includes "due process" allegations and violations of state law and MHRH rules

03/22/2005 Gateways Motion for Preliminary Injunction served on MHRH, seeking to enjoin the Hearing referred to in the Notice of Show Cause Hearing.

Injunction hearing scheduled for April 16 – two days before the Show Cause Hearing would take place

03/23/2005 MHRH Petitions to remove lawsuit to US District Court

03/24/2005 Gateways to MHRH:

It is an interesting process. Before filing the lawsuit, I asked MHRH to consider withdrawing the "Notice of Show Cause Hearing" process without prejudice, but the suggestion was rebuffed.

04/05/2005 Gateways to MHRH:

Although MHRH is free to argue otherwise, the "Notice of Show Cause Hearing" by its terms says that an action that could result in an adverse licensing decision has not yet been "initiated."

It seems to me that service of the "Notice of Show Cause Hearing" either is in itself the initiation of a licensing action (subject to objections and defenses that might apply) *or it is something other than the initiation of a licensing action, in which case I wonder what it is*.

04/12/2005 Gateways to MHRH:

1. If MHRH asserts that the April 26 hearing relates to an MHRH decision already made or an action already taken -- instead of the possibility that a licensing action might be initiated after the hearing -- please direct my attention to, or provide a copy of, the MHRH decision or action which the April 26 hearing is intended to contest.

2. Please explain why an informal hearing has not been scheduled in compliance with Section 3 of the Rules.

3. Please explain why none of the pre-hearing procedures referred to in Section 4 of the Rules have been initiated by MHRH.

4. Please confirm that MHRH will arrange to have a court reporter transcribe the hearing.

5. Please consider this note to be a formal request that within a reasonable time in view of the date of the hearing --

- I be advised of the identity of each of MHRH's witnesses
- I be provided with a copies of each exhibit the Department will offer, as well as all documents utilized by the Department in making its decision

[Please Note: At this point, two weeks before the hearing, although there is only one set of Rules governing hearings before MHRH, MHRH had not complied with the most basic and important pre-trial requirements -- including disclosures -- that are contained in the Rules. On the other hand, MHRH had not yet – and never has – advised Gateways whether and to what extent any ***other*** rules or procedures might apply to the Hearing.]

04/15/2005 MHRH to Gateways:

I have appointed [name omitted] as the designated hearing officer to handle your Notice of Appeal. Mr. [name omitted] will be contacting you directly to set up the hearing date, time and location.

**Your appeal will probably be scheduled for hearing after the April 26, 2005, date for hearing contained in the Notice of Show Cause.**

Despite your filing a Notice of Appeal and a Civil Action concerning among other things the Notice to Show Cause on your client's behalf, Gateways to Change has been diligently and voluntarily working with the Department on all the

requirements of the Notice to Show Cause.

I appointed [name omitted] as my designee to handle the Notice to Show Cause. Mr. [name omitted] is out of the state on April 26, 2005, and is therefore not able to handle this matter as my designee. As such, unless you instruct the Department that your client will no longer participate in the Notice of Show Cause process, I am continuing that matter to May 10, 2005, at nine o'clock in the morning, at Barry Hall in Room 126.

It is my hope that your client will continue to voluntarily participate in the Notice of Show Cause process despite the pending administrative appeal and civil action.

[Please Note: MHRH has tried to schedule the TRIAL to occur before resolving objections to the process of which the TRIAL is the last step. It is hard to miss the obvious absurdity of this sequence.

Furthermore, after weeks contesting the Show Cause Hearing Process – including our filing of a lawsuit against MHRH – by its letter MHRH tries to portray Gateways as a "volunteer" in the process!]

04/19/2005 Gateways to MHRH:

Ms. Spangler has elected to put the Notice of Show Cause process and our objections to it onto two different tracks. She has re-assigned the Show Cause hearing for a date certain – May 10 – that she says will likely occur *before the hearing on our objections*.

That is not only strange (to say the least) but ineffective. We intend to press our objections to the Show Cause process at the Show Cause hearing, whenever it takes place, to avoid an argument later that objections were waived by our failure to raise them.

Nothing in Ms. Spangler's letter relieves MHRH of its own obligations under the "RULES AND REGULATIONS GOVERNING THE PRACTICES AND PROCEDURES BEFORE THE RHODE ISLAND DEPARTMENT OF MENTAL HEALTH, RETARDATION AND HOSPITALS" dated January, 2002.

Please refer to my April 12 Memorandum, especially page 2 where it mentions MHRH's pre-hearing disclosure and other obligations.

We appreciate Ms. Spangler's kind comments about the diligence exhibited by Gateways during this process. However, I am perplexed by the following:

> It is my hope that your client will continue to voluntarily participate in the Notice of Show Cause process despite the pending administrative appeal and civil action.

Gateways has never been a "voluntary" partner in the Show Cause process, which began with Ms. Spangler's service on Gateways of a Notice which included this directive:

> ...the Department is instructing Gateways to attend a Show Cause Hearing... to show cause why the Department shall not, at that time, initiate a licensing action against Gateway's above enumerated licenses...

Gateways' participation in the process – including the hearing on May 10 – can in no sense be considered voluntary so long as we are instructed to participate under a threat that all of Gateways' licenses may be revoked.

If Ms. Spangler wishes to rescind the Notice of Show Cause Hearing she should do so.

More than once, orally and in writing, I have suggested that the process was outside the regulations, and that MHRH ought to withdraw the Notice of Show Cause Hearing. Now the due-process problems that the Notice provoked have been

multiplied by bifurcating the process. If I compare the newly-bifurcated Show Cause process with the Contested Case rules that MHRH is obliged to apply, there is a disconnect that is hard to miss.

I still request that within a reasonable time in view of the date of the May 10 hearing --

> I be advised of the identity of each of MHRH's witnesses
>
> I be provided with a copies of each exhibit the Department will offer, as well as all documents utilized by the Department in making its decisions

[Please note: at this point not only do we not know what procedural and evidentiary rules or principles will apply to the Hearing, but MHRH intends to hear our objection to that after the Hearing takes place. There is not only a due-process void, but a refusal on the part of MHRH even to hear arguments on why the void should be filled before trial.]

04/27/2005 Pre-Trial Conference with Assigned Judge at US District Court:

Lawyers discuss several issues with the Judge Lisi, including MHRH's assignment of the Show Cause "trial on the merits" <u>before</u> hearing on the objections to the Show Cause process. The Judge suggests MHRH's counsel talk to their client about this order of proceeding.

05/09/2005 MHRH to Gateways:

The afternoon before the "trial" in the Show Cause process is to start, MHRH faxes letter postponing it indefinitely, and conceding that objections to the process will be heard first:

> ... the Department shall continue the Notice to Show Cause hearing scheduled for May 10, 2005 until after Hearing Officer [name omitted] resolves your administrative appeal.

[Please Note: MHRH has finally conceded that the trial should not be held before it is determined that the trial can lawfully be held... <u>*This is the first time that MHRH has permitted an opportunity to test the propriety of the Show Cause Hearing process – MHRH's failure to follow the contested case Rules –* ***at the administrative level****, subject to the provisions of the Administrative Procedures Act.*</u>]

MHRH files current Motion for Summary Judgment saying, among other things

> In the instant case, not only is there an adequate state law remedy available to plaintiff but plaintiff has in fact engaged in that review process... Pursuant to MHRH's Rules and Regulations, this appeal is being heard by a hearing officer.

[Please note: Until the day before the Hearing – and only following useful guidance provided by a Federal Judge who would not have had occasion to provide the guidance but for the lawsuit – MHRH had finally, reluctantly conceded that the trial on the merits would not be convened in a substantive and procedural vacuum. Had that concession not been made, then less than one day later we would have been at "trial" in the Notice of Show Cause Hearing process, with no standards to guide the process. We know the contested case Rules would not have applied, since once we were at trial it would not have been possible to vindicate our right to pre-trial disclosure of evidence and witnesses. And we know that MHRH had not pointed to any <u>other</u> set of rules or procedures that would have applied to the trial.

MHRH's grudging and limited concession that the Rules had to be considered before the trial on the merits took place represented a hard-won litigation victory for Gateways, not a repudiation that our efforts were "unnecessary."]

07/03/2005 *Providence Journal* reports conversation with Governor Carcieri, following testimony of witnesses (including Gateways staff and their counsel) at legislative hearing to consider confirmation of Kathleen Spangler as Director of MHRH:

> "You had a provider group come in on Kathy Spangler -- one of them we're actually in suit on, <u>*to remove their license*</u> -- so for them to come in to say she's not

fit I think is completely inappropriate," he said.

[Please note: by this time, attorneys for MHRH had told both the departmental hearing officer and the Federal Court that the objective of the Show Cause Hearing Process was not, and could not be considered, an attempt to remove our license.]

## *Rule 56 and Contested Issues of Fact*

This is not a motion to dismiss under Rule 12 for failure to state a claim. It is instead a motion under Rule 56 for summary judgment, under which MHRH carries the burden. The Rule provides that MHRH may make the motion "with or without supporting affidavits."

The Rule also provides that judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue."

MHRH has provided no affidavits. There are no discovery materials because discovery was stayed pending resolution of the motion. Other than our Amended Complaint, the only "support" MHRH has provided for the assertions of fact in its Memorandum and Statement of Undisputed Fact is – well, in fact, they provided *no "support" that Rule 56 specifically endorses*.

On page 3 of MHRH's motion, they say that the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but … must set forth specific facts showing that there is a genuine issue for trial." That is not an accurate citation of Rule 56, which *actually* says:

> When a motion for summary judgment is made *and **supported** as provided in this rule*, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

MHRH has written out of the rule its own obligation to provide its own evidentiary "support" before subjecting us to the obligation to do so.

In its defense, MHRH has supplied a Statement of Undisputed Fact as provided in Local Rule 12.1. But let's be fair about that. They have included in their Statement allegations of "undisputed" fact that Gateways has no practical ability to test, inasmuch as the assertions have never been made before, and we were not permitted to depose the agency making them.

The assertions of "undisputed fact" involve unspecified statistical data that – if they exist at all – lie within Defendants' exclusive control. The assertions also involve expressions of opinion that can be attributable to no one other than the attorney signing the Memorandum; and no one could have any reasonable expectation that we would agree with them.

On the other hand, we have provided the kind of "support" that fits the Rule 56 definition and is the kind of support that Rule 56 usually provokes: affidavits sworn on oath by Catherine McGillivray, executive director of Gateways; by Gary St. Peter and Richard Galli, Gateways' attorneys; and by Douglas Stone, who until just last month was an employee of MHRH, one of the Quality Assurance investigators assigned to "monitor" Gateways, and a person with personal knowledge of matters that are disputed.

The content of their attached affidavits will not be reproduced here. We will discuss in brief a few of the positions taken by MHRH in its memo and attachment.

### *The Notice of Show Cause Hearing As the Whole Case*

In the first few pages of our Complaint, there are dozens of references to Gateways, MHRH, and its director – and to actions, decisions, policies and motivations that have influenced the action taken against Gateways.

MHRH has decided it will be easier to get the case dismissed if the only issue in the case is the procedure underlying the Notice of Show Cause Hearing. Instead of seeing the Notice as a part of a larger problem, they try to make it seem like the only problem.

*Using only one footnote,* MHRH has attempted to avoid confronting <u>any</u> of our allegations that do not fit within its tunnel vision of the case.

> The first seven (7) pages of Plaintiff's First Amended Complaint raise *factual allegations <u>involving</u> parties not named in the instant suit*. These allegations are likewise *unrelated to the causes of action claimed by plaintiff*. Consequently, they are *immaterial* to resolution of the instant Motion. [footnote, page 1 of the memorandum; emphasis added]

Contrary to the wishful thinking contained in that footnote, the first seven pages of the Amended Complaint actually contain several paragraphs alleging conduct and misconduct on the

part of MHRH in its relations with Gateways. The fact that *some* of those paragraphs *also* mention other people does not make the paragraphs either invisible or unimportant.

Because MHRH carries the burden in a Rule 56 motion, the failure to contest those allegations in any way – in fact the overt, conscious refusal to contest them – does not submit those allegations to the Rule 56 test. MHRH has not asserted that the allegations are untrue.

### *Equal Protection and "Similarity"*

In dealing with the Equal Protection claims, MHRH says:

> It is undisputed that [a blank appears here in the memo!] has been the subject of significantly more complaint [sic] than any other licensee. As noted, MHRH received more than double the number of reportable incidents than any of the other nine (9) providers of similar scope.

That statement is nonsense from any angle:

- They forgot to say whether the person or entity subject to the complaint [sic] or incidents was Gateways.
- There is no factual support for the assertion; no verification by anyone.
- The numbers themselves were not provided.
- The term "complaint" is meaningless in a *self-reporting* system! Reports are often made by providers even though no wrong was done, or if done was committed by someone other than the reporting agency. If a provider reports seeing bruises when a resident came back from a visit to his mom's house, is that a "report" that should make the provider ashamed? Is it a "complaint"? Is it counted in MHRH's statistical analysis? Who counted it?
- MHRH has discriminatorily subjected Gateways to dramatically more inspections than any other provider – the exact multiple we will learn in discovery, but it will be impressive. Douglas Stone's affidavit is stark evidence of the enormous disproportion in the attempts made by MHRH to "find something" to use against Gateways. This is evidence of our comparative mistreatment, not evidence that we have no Constitutional similarity to other members of our group
- We don't know what the fanciful term "scope" means when used to evaluate a provider, much less which unidentified providers are of "similar scope." Mr. Stone says the term has no meaning within MHRH parlance.
- Anyway, if we are of a "scope" similar to that of nine providers, why are we not part of that similarly situated group?

Similarity is not a such a hard concept to grasp. Gateways holds licenses issued by MHRH, to provide supports within the Division of Developmental Disabilities (DDD). There are about 25 or 30 similarly situated providers who hold licenses issued by MHRH to perform supports within DDD.[1] That is the basket of apples of which we are one similarly situated apple. Mr. Stone's affidavit and that of Mr. St. Peter provide support for that.

### *Equal Protection and "The Verge"*

MHRH authored this statement, referring to the Notice of Show Cause Hearing which they refer to as an act of "oversight" (rather than a contested case). This is a statement that MHRH thought a Judge ought to know, and to accept as true, and in so doing throw out a plaintiff's case:

> ...plaintiff [sic] were *on the verge of* being made subject to a license revocation procedure before the instant oversight was instituted.

There is no affidavit to support that allegation. It does not appear in their statement of uncontested facts.

One has to wonder: what does being "on the verge of" something mean? Who makes the determination that someone is "on the verge of" something? And what is the legal significance of having been "on the verge of" something that never, in fact, happens?

Is it like, "I was on the verge of winning the lottery, but decided not to buy a ticket"?

Or is it like, "You were on the verge of getting charged with murder, so you shouldn't complain about being imprisoned for manslaughter without a trial"?

Let's consider the logic and the factual support behind that statement.

> ...plaintiff [sic] were *on the verge of* being made subject to a license revocation procedure before the instant oversight was instituted.

We agree that no legitimate license revocation procedure, designated as such, was initiated under the MHRH Rules of Practice. However, we say that the Notice of Show Cause

---

[1] We may learn the precise number when discovery is permitted.

Hearing was an illegitimate attempt to exercise the same power – but it was done so in derogation of the MHRH rules.

We know that Kathleen Spangler, the director who issued the Notice, told *The Providence Journal* that the purpose of the Notice of Show Cause Hearing was, in fact, to do precisely what could be done by a "license revocation procedure." This is from a *Journal* report on February 4, 2005:

> State regulators are demanding that Gateways to Change... make reforms... or face *losing its license*... Gateways has until April 26 to make the changes or *face sanctions at a show-cause hearing*.

We know that the Governor recently conceded that the state was in litigation to remove the license. Now we are told that the state was "on the verge of doing that," but didn't do it.

MHRH made the argument – as incredible as it may seem – that the test of whether a litigant is "similarly situated" for equal protection purposes is *the way that the litigant has been treated by the defendant*. The Court is urged to hold that Gateways is dissimilar to all other licensed providers because we were "on the verge" of "being made subject to a license revocation procedure."

To resolve our case, a federal Judge is asked to look away from the events that actually happened in the real world, and concentrate instead on *some other event*, that *might* have happened – if someone who is *not identified* (although it's probably Ms. Spangler) took some *even more hostile action* based on some *potential decision* that was *never made*... and might itself have been an unlawful abuse of power.

That doesn't seem very helpful to analysis of the *actual* case we have before us.

We wonder how speculating about MHRH's inchoate and unfulfilled intentions can possibly help a federal Judge decide an actual case and controversy that originated in the real world where things did, in fact, happen.

How is the Court expected to use the speculation that Gateways might have been the "subject" of some other form of license revocation proceeding? This is what they say.

> …plaintiff [sic] were *on the verge of* being made subject to a license revocation procedure before the instant oversight was instituted. *Plaintiff therefore is not "similarly situated"* to the other licensees and therefore cannot maintain a claim for the deprivation of its right to equal protection.[2]

Otherwise stated, no provider can be "similarly situated" if MHRH *considers* starting a revocation proceeding against them and not against all the others. Since no such provider can be considered "similarly situated" to the other providers, then no such provider will be able to prove an Equal Protection claim when and if MHRH pursues a *different* strategy later on.

This must be a joke. This cannot be rational Constitutional analysis.

It cannot be true that a party loses its Equal Protection rights because an opposing party was *"on the verge of"* taking any action, no matter what the action is.

But that is exactly the argument made by MHRH.

The audacity of the argument is breathtaking. Can a plaintiff really be ousted from a class of similarly situated brethren because a Defendant chose to "target" the plaintiff and not the others?

We thought that was the basis for an equal protection claim, not a defense to it.

This is serious business. A federal Judge is being asked to dismiss claims in a lawsuit because of the logic and the factual averments submitted by the moving party to the Court.

Perhaps if MHRH had sought and carefully considered the content of sworn affidavits to support the content of its motion papers, some of this foolishness would not have made it to the laser printer. But Gateways is fighting for its life, and would be disappointed to find that our lawsuit had been dismissed because – using only one example – the Court agreed with MHRH that we have lost our standing as part of a group of providers because the opposing party *considered* taking some kind of action against us (but not the others) and then decided not to.

---

[2] Memo, page 8. The variation between this logic and Rule 56 is breathtaking. A Court must find Gateways to be deemed constitutionally dissimilar to its provider peers based on the unverified statement in a Memo that someone might have brought a proceeding but did not. The "fact" that sets us constitutionally apart is a lawyer's invitation that the Court imagine an alternative universe, in which bad things might have been said against us in a pleading that was never filed.

Silly or not, that argument was intended to do damage when it was made.

### ***Due Process Issues***

In *Ardito v. City of Providence,* 263 F.Supp.2d 358 (D. RI 2003) the Court said:

> The Fourteenth Amendment prohibits a state or its subdivisions from depriving any person of "property" without due process of law. U.S. CONST. amend. XIV, § 1. Due process has both a substantive component that protects against arbitrary and capricious infringements and a procedural component requiring that the methods employed satisfy constitutional standards of fundamental fairness. *See Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield,* 719 F.Supp. 75, 80-81, 83 (D.R.I.1989). *Procedural due process is a flexible standard that "calls for such procedural protections as the particular situation demands." Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Generally, procedural due process requires notice of the proposed action and an opportunity to be heard. *Gorman v. Univ. of Rhode Island,* 837 F.2d 7, 12 (1st Cir. 1988). [263 F.Supp.2d 358 at 368; emphasis added]

Defendants quite properly pointed out that a prerequisite for our kind of due process claim is that we have a protectable property interest. We do.

The Rhode Island Supreme Court has recognized that a license, once granted, vests in its holder a reasonable expectation – amounting to a protectable property interest -- that the license will not be discontinued or revoked absent due process. The general concept was discussed in *Tillinghast v. Glocester,* 456 A.2d 781 (RI 1983):

> ...the owner of an ongoing business must be afforded due-process protections... "[T]he administrative body * * * should not have the same breadth of discretion in refusing the renewal of the license of an operating business as it would in passing on an application for the establishment of a new business. The reasonableness and justice of such a rule is apparent when one reflects on the practicalities of the situation where the business has been established and operating for some years and thus represents a substantial commitment in the time, effort and expense by the owner." [Citing. *Anderson v. Utah County Board of County Commissioners,* 589 P.2d 1214 (Utah 1979) at 1216]
>
> There is little, if any, doubt in this case that the Tillinghasts' property interest in their business and its continuation entitles them to the benefits of due process. The rights of a licensee are generally protected by due process. See *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Millett v. Hoisting Engineers' Licensing Division,* 119 R.I. 285, 377 A.2d 229 (1977).

Having established the existence of the Tillinghasts' due-process right, we must next determine its scope. The dictates of due process in the area of administrative decisions were expressed in *Millett* as follows:

> "It is well established that due process within administrative procedures requires the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 296, 377 A.2d at 235--36.

... Admittedly, the exact dimensions of the due-process guarantee may vary from case to case, but the Supreme Court has said that the purpose of notice under the due-process clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Since continuous possession of the license may be vital to an individual's livelihood, it seems only fair that we subscribe to the sentiments expressed in *Konstantopoulos v. Town of Whately,* ---Mass.---, 424 N.E.2d 210 (1981), where the court ruled that a municipality should notify a licensee "with reasonable particularity" of the charges he will be called on to meet at any hearing concerning his continued retention of a license.

We concede that it would be unreasonable to expect the town council to inform the licensee of the identity of everyone who would speak at a public hearing and what charges he or she may level. However, we do believe that the licensee should be informed that this type of testimony can be expected at a meeting; and if the town itself plans to present evidence adverse to the licensee's interests, the licensee should be apprised of the situation.

*Tilllinghast,* 784-85

In fact, the headnote to the Tillinghast case summarizes it this way:

The Supreme Court, Kelleher, J., held that: (1) campground owners possessed legitimate property interest in renewal of their license, and thus, were entitled to benefits of due process, and (2) failure to give owners notification of charges to be leveled against them and type of testimony to be given at town council meeting violated their due process rights.

The MHRH contested case Rules provide licensees with exactly the kind of pre-trial due process notice that the *Tillinghast* case requires.

MHRH's refusal to follow those Rules – *and provide no substitute rules or procedures in their place* -- created a due-process void. In its Motion, MHRH has pointed to nothing with which it attempted to fill the void. Instead, MHRH tries to show that the Rules which we have only recently forced them to consider, did apply all along.

Their suggestion that they have been following the Rules all along can't be true. If it were true, then the Show Cause Hearing process should have begun with a clear notice of intended action, followed by an informal conference, followed by pre-trial disclosures of evidence and testimony, followed by the trial. MHRH tried to convene only the trial, until this litigation convinced them to do otherwise. So they simply cannot say that they were following the Rules. This litigation compelled them to do so, with some persuasion by this Court.

It may be true that a state agency can violate its own rules and still pass constitutional muster if what it does *instead* of the rules is "due enough." But this agency didn't provide a sufficient substitute, and is trying to say now that it has been following the rules all along.

## ***Conclusion***

The situation we find ourselves in now is somewhat reminiscent of what Judge Lagueux was discussing in *Faerber v. City of Newport,* 51 F.Supp.2d 115 (D. RI 1989):

> Faerber's procedural due process claim fails because he has not exhausted his state remedies. *This suit is his state remedy*... This Court is sitting in the place of a state Superior Court justice because the case was removed. Faerber cannot pursue in a single lawsuit both the appeals process offered to him by the state and a claim that the same process is constitutionally insufficient. A federal court cannot judge the process to know whether it is constitutional until that process has come to an end.
>
> To summarize, Faerber has not exhausted his state process. Until the state has had an opportunity to provide a remedy, Faerber cannot allege that the state provides no constitutionally-adequate remedy. Therefore, the due process claim in Count IV must be dismissed. [51 F. Supp. At 120]

Our lawsuit was filed in state court at a time when the Show Cause Hearing – the trial on the merits -- had been scheduled and MHRH had committed the due process sin of ignoring the Rules applicable to its hearings, while at the same time providing no legitimate due process standards in their place.

At that point, we had no ability to raise our objections effectively in the administrative setting. The simple fact was this: it was impossible for us to exhaust our state remedies under the Administrative Procedures Act, because APA rights and obligations attach to cases and hearings

that were brought under the contested case Rules – and MHRH had not initiated the Show Cause Hearing under the Rules. And then MHRH compounded the problem by saying the trial could take place before hearing our objection to the process.

It was only through litigation that we have made progress in bringing MHRH back on track. *It is was only after the conference with this Court that we were finally given the opportunity to "exhaust our remedies" at the administrative level.*

Consequently, although we strenuously object to the reasons for a dismissal of the Constitutional claims proffered by the Defendants in their Motion, we would have no objection to their dismissal on the grounds that they are premature.

All we ever wanted was the process that the law already provided to us. So long as that process is respected, we are content to litigate within it.

**Gateways to Change, Inc.,** by its Attorneys

**Richard G. Galli, Esq.** 1747
*Designated Trial Counsel*
*Of counsel* to St. Peter & Kasle Incorporated
Four Richmond Square
Providence, RI 02906
Phone 401 4534330 / Fax 453 4333

**Gary R. St. Peter, Esq.** 1672
St. Peter & Kasle Incorporated
Four Richmond Square
Providence, RI 02906
Phone 401 4534330 / Fax 453 4333