**Affidavit of Catherine McGillivray**

1. I am the Executive Director of Gateways to Change, Inc., plaintiff in this case.

2. Gateways holds licenses issued by MHRH, to provide supports within the Division of Developmental Disabilities (DDD). There are more than 30 similarly situated providers who hold licenses issued by MHRH to perform supports within DDD.

3. When MHRH claims that Gateways is "similar in scope" to nine other agencies – rather than to the whole group of licensees – MHRH is using a meaningless term. The concept of the "scope" of an agency has no meaning that I know of. The term "scope" has not, to my knowledge, ever been used by DDD to define or characterize any agency or group of agencies. There is no method that I am aware of by which DDD has ever before tried to subdivide or classify its licensed agencies according to their "scope."

4. I have also reviewed the statements of "undisputed fact" concerning MHRH's "reporting" and other statistical data, referenced in its Memorandum, and aver that those assertions have not been made to us previously, nor have they been explained to us, nor have we been given access to any of the raw data or estimates upon which the statements are based, nor do we believe that they accurately describe the situation as to which they were offered for support.

5. Nor have we been provided with the opinion of any expert, any witness or any other person concerning that information, with the exception of the *contradictory* facts and opinion expressed by Douglas Stone in his affidavit, which we have provided to the Court in support of our objection to the Motion for Summary Judgment. Based on his first-hand knowledge of the source of the data, we contest their accuracy and their meaning.

6. For more than a year, beginning before the Notice of Show Cause Hearing was served on us, Gateways has been subjected to excessive, repeated, and burdensome visits from MHRH's licensing and quality assurance staff. Many of the visits are unannounced, interrupt our work, and require us to redirect staff time and energy away from our mission, which is support for our consumers and residents.

7. While we understand the important role that QA and licensing inspections play in our system, and while some of the MHRH staff with whom we deal are respected and appreciated, we also believe that the sheer number and frequency of these interruptions is intended by some persons at MHRH to be a form of harassment or punishment, and is motivated by a bad faith attempt to injure us.

8. Since December, 2003, we have received approximately 120 of these visits. According to a former MHRH employee, Douglas Stone, whose affidavit has been provided to the Court, other similarly situated providers could expect no more than three or four visits in a year.

9. Despite these difficulties, we have continued to work in good faith with staff at MHRH in responding not only to instructions contained in the Notice of Show Cause Hearing but also other requests for information, recommendations and instructions that we have frequently received.

10. MHRH suggested that we work with two well-regarded consultants to develop a new "risk management system." As part of the consultants' work, they visited a number of our residential sites, and made random inspections of our program binders, medical books and other records. They reported to me that what they saw at Gateways was above national standards.

11. Recently MHRH suggested that we cooperate in a review by one of the nationally-recognized consultants specializing in incident management and reporting. At MHRH's suggestion, she spent several days in Rhode Island, Gateways and MHRH each sharing in the expense. She was provided access to our records and reviewed records at MHRH as well. The information included the methods used and information gathered by our staff and also by the staff of the MHRH Office of Quality Assurance during investigations of "incidents" of the kind referred to in MHRH's motion for summary judgment.

12. The consultant is a well-regarded expert whose opinion we value, and to whom we listened attentively. She was conducting her review with our consent, but at MHRH's suggestion. When the consultant began to raise questions with MHRH about the way it conducted its own investigations, she was told by MHRH that she was no longer permitted to speak with its staff. We continued to work with the consultant, because we respected her and had nothing to hide.

Catherine McGillivray

**Catherine McGillivray**

Subscribed and sworn to before me this 8th day of July, 2005.

Richard [illegible]
Notary Public

Notary Public